A. G. JACKSON & CO. *v.* SLIGO MAN. & M. CO. *et als.*

STOCKHOLDERS. *Sale of Stock. Not liable.* Stockholders, or holders of shares in a company incorporated, cannot be held liable to pay calls on stock to discharge debts of the corporation incurred by a new organization of the corporation, after they had *bona fide* sold and disposed of their stock and interest in the corporation.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. O. P. TEMPLE, Ch.

BAXTER for complainants.

LOGAN & EAST for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill is filed by complainants to enforce the liability of Mr. Burns and others as stockholders, or owners of shares in the corporation known as Sligo M. & M. Co. Judgments before a justice of the peace had been had on all the claims, except an open account, and executions returned *nulla bona*.

The bill charges that the defendants are due the company $10,000 on stock owned by them, and fraudulently refuse and neglect to call for payment on this sum, they having the control of the company. It charges further that they have, fraudulently, mutually agreed to issue to themselves certificates of stock, as paid up, and so expressed on the face of the certificates, and this in some instances after the contraction of the debts of complainants; also, that stock had been assigned to irresponsible and insolvent parties, but that said transfer was fraudulent with intent to defeat creditors.

It is obvious from this statement, taken from the bill, that defendants' liability depends on making good these charges, that is, that at the time of the origin of the debts, or at filing of the bill, respondents owned stock which had not been paid up, or had fraudulently transferred stock to evade payment of the debts of the corporation.

The answers of defendants Burns, Nelson, and Davis,

admit that they had been members of the corporation, and had organized it, together with James Sloan and Joseph Nash. Burns was elected president, and Nash secretary, and that it was agreed the stock of the company should be nominally $200,000, and each of the stockholders should be considered owner of a certain number of shares, perhaps fifteen, of twenty dollars each share. They emphatically deny all fraud as charged, and deny that any stock was ever issued, on the contrary say, they refused to issue any stock until they could see whether the enterprise would prove successful. Finding, however, the enterprise would not prove profitable, they sold their entire interest to one Sloan, who is alleged to have been perfectly solvent at the time. Since said sale they say they have had nothing to do with said company, nor its affairs, and that they diligently sought for and paid all the debts ascertainable due by said corporation before this sale. They aver on information, that since said sale a new company was formed by Sloan and others, and they believe complainants' debts have all been created by said new corporation. Nelson admits that Sloan gave him, either as a gratuity or as compensation for his losses, some five or six hundred dollars of the stock in the new company. They say this sale was made in December, 1856, or early in January, 1857, the precise date not recollected. But in the testimony taken by complainants it is definitely proven that the sale of the whole interest of Burns, Nelson, and Davis to Sloan was made in December, 1856.

The Chancellor held a portion of the respondents

Jackson v. Sligo M. & M. Co.

liable to pay sufficient to discharge the debts on their stock, and ordered an account. From this decree an appeal was prayed and granted by such defendants, but only Burns and Nelson have perfected said appeal by giving bond.

The question is as to their liabilty. It is clear no decree could ·be had against them on the ground of fraud as charged in the bill. This is denied and no proof attempted of the charge. It is clearly disproved. They must be held, if at all, as owners of unpaid stock not called for. It is clear from the proof made by complainants themselves, that these parties sold and transferred all their interest to Sloan in this company in December, 1856, and were not the owners of any stock or interest at that date. Mr. Nelson received as paid up stock, nominally, certificates from Sloan after the new organization, some shares of stock, but he cannot be held on this, as it was received as, paid up stock, and no liability incurred by him or intended to be at the time, nor does it appear clearly at what date it was received by him.

That a party owning shares of stock unpaid may transfer them, and thus cease to be liable, no law forbiding, nor any prohibition in the charter, seems to be well settled. See Ang & Ames on Corp., 570, and other sections. This being so, the parties are clearly not liable as is held in the decree. We may add that it is pretty certain that the debt was created under a new *regime*, and not under the administration of these parties, as the note is signed by Sloan, who bought of Burns and the other parties. Burns was

president of the company and Nash secretary while the original organization lasted. The other debts were created after this note. We are relieved from considering the question of necessity of transfer on the books of the company, as no stock book was kept, and no stock ever formally subscribed. We would probably come to the same conclusion, if this had been the case, as the sale was free from fraud, and transferred all the interest of the parties, and there was certainly no credit given to them or their stock subscription.

The result is, that the decree of the Chancellor will be reversed and the bill dismissed as to Burns and Nelson at costs of the complainants, as to this court, and also the costs of making them parties in the court below.

The case as to the other parties is in the court below and not before us for adjudication.